IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHERYL BOLTON, et al.,                    )
                                          )
                Plaintiffs,               )
                                          )
v.                                        )      Case No. 05-2361-JWL
                                          )
SPRINT/UNITED MANAGEMENT                  )
COMPANY and SPRINT NEXTEL                 )
CORPORATION,                              )
                                          )
                Defendants.               )

## MEMORANDUM AND ORDER

### I.  Introduction

This is an age discrimination case brought by thirteen individual plaintiffs who challenge a corporate reduction-in-force ("RIF") by defendants.  Plaintiffs allege that age was a determining factor in defendants' decisions to terminate plaintiffs' employment during a RIF, and that defendants' use of a so-called forced-ranking performance review system had a disparate impact on plaintiffs, all of whom are protected under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*  In addition, two of the plaintiffs, Teresa Esshom-Sheldrake and Charles Whisenhunt, assert claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*  Finally, one plaintiff, Connie Silin, asserts a claim for gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

The matter now before the court is plaintiffs' motion to compel defendants to produce certain documents (**doc. 115**).  Defendants have responded (doc. 121) and plaintiffs have replied (doc. 127).  For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## II.   Analysis and Discussion

Defendants argue the instant motion should be denied because plaintiffs' *second* request for production of documents, which is now at issue, seeks much of the same information plaintiffs failed to timely pursue or compel months ago with regard to their *first* set of requests, thus violating D. Kan. Rule 37.1 (requiring that a party attempt to confer and then file a motion to compel within 30 days if the opposing party fails to fully respond). Plaintiffs respond by arguing that, although *some* of the requests do overlap or have commonality with previous requests, this is no substantive basis to deny plaintiffs the discovery sought.  In any event, in keeping with the general mandate of Fed. R. Civ. P. 1, under the unique facts of the case at bar, and the very limited record of purported duplication provided by defendants, the undersigned U.S. Magistrate Judge, James P. O'Hara, declines to rule based on this procedural technicality.  Instead, the court will proceed to address the merits of the instant motion.  However, the court's rulings will be limited to defendants' objections based on relevancy, scope (i.e., overly broad), burdensomeness, and privilege, as these are the only objections addressed in defendants' response to the instant motion.

A.      Scope of Discovery and Relevancy

Defendants object to all of plaintiffs' second requests for production on the grounds they seek information that is irrelevant to the individual discrimination claims. Specifically, defendants assert plaintiffs are not entitled to the same breadth of discovery as in *Cavanaugh*[1] and *Williams*,[2] large-scale collective actions bought against defendants with more than 460 and 1700 plaintiffs, respectively. Defendants argue that, because this case involves only thirteen individual claims, the only relevant and useful statistical evidence regarding their release relates to comparables with whom plaintiffs were compared.

Under Fed. R. Civ. P. 26(b)(1), parties in civil litigation generally may obtain discovery regarding any non-privileged information that is relevant to the claims and defenses in the case. Relevancy in federal court is broadly construed, and thus a request for discovery should be considered relevant if there is "any possibility" the information sought may be relevant to the claim or defense of any party.[3] A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[4] More specifically, when the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance

---

[1] *Cavanaugh v. Sprint/United Management*, Case No. 04-3418 (N.D. Ga.).

[2] *Williams v. Sprint/United Management Company*, Case No. 03-2200 (D. Kan.).

[3] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (Waxse, M.J.) (citations omitted).

[4] *Id.* (citations omitted).

by demonstrating the requested discovery (1) does not come within the broad scope of

relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that

the potential harm the discovery may cause would outweigh the presumption in favor of

broad disclosure.[5]

When addressing objections to discovery requests on the basis they are overly broad,

> courts have limited the geographic scope of discovery. In non-class action employment discrimination cases, the standard for determining the geographic scope of discovery focuses on "the source of the complained discrimination – the employing unit or work unit." In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to plaintiff's employing unit. Discovery may be expanded from the [p]laintiff's employing unit, however, if the plaintiff can show the requested information is "particularly cogent" to the matter or if the plaintiff can show a "more particularized need for, and the likely relevance of, broader information."

> In determining the appropriate employing unit of the plaintiff alleging employment discrimination, courts look to the level of the supervisor or supervisors who are primarily responsible for the employment decision regarding the plaintiff and other similarly-situated employees.[6]

---

[5] *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999) (Waxse, M.J.).

[6] *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 653-54 (D. Kan. 2004) (Waxse, M.J.) (citations omitted).

In a fairly recent ruling by the Tenth Circuit Court of Appeals in *Mendelsohn v. Sprint/United Management Co.,*[7] which was handed down after all the briefing with regard to the instant motion had been filed, the appellate court found that

> [i]n this case, the other employees' testimony is logically tied to Sprint's alleged motive in selecting Mendelsohn to the RIF. Although Mendelsohn and the other employees worked under different supervisors, Sprint terminated all of them within a year as part of an ongoing company-wide RIF. All the employees were in the protected age group, and their selection to the RIF was based on similar criteria. Accordingly, testimony concerning the other employees' circumstances was relevant to Sprint's discriminatory intent.[8]

The undersigned magistrate judge is unpersuaded that *Mendelsohn* necessarily broadens the appropriate geographical scope of discovery in all employment discrimination cases. Nevertheless, the *Mendelsohn* ruling is instructional for purposes of the case at bar. That is, it is well-established an individual plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported nondiscriminatory explanation.[9] Statistical data is plainly admissible to show an employer's proffered reason for terminating the plaintiff is purely pretext.[10] Therefore, under certain circumstances, even in an individual discrimination case, discovery on a company-wide basis

---

[7] 466 F.3d 1223 (10th Cir. 2006).

[8] 466 F.3d at 1228.

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (1973); *Denison v. Swanco Geolograph Co.*, 941 F.2d 1416 (D. Kan. 1991).

[10] *Denison*, 941 F.2d at 1423 (10th Cir. 1991) (citing *McDonnell Douglas*, 411 U.S. 804).

may be appropriate.  Accordingly, the court overrules defendants' objection that all the requests in issue are over broad and seek irrelevant information.

B.    Unduly Burdensome

Defendants argue production of documents responsive to Requests Nos. 1-7 and 9-13 would cause great labor, expense, and hardship to Sprint, disproportionate to any conceivable benefit plaintiffs might gain from the production.

As the party objecting to discovery, defendants have "the burden of showing facts justifying their objection by demonstrating the time or expense involved in responding to requested discovery is unduly burdensome."[11]  The court, of course, must balance the burden on the interrogated party against the benefit to the discovering party of having the information.  Discovery should be allowed unless the hardship is unreasonable compared to the benefits to be secured from the discovery.[12]  Further, the "mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and the possibility of injury to the business of the party from whom discovery is sought does not itself require denial of the motion."[13]

---

[11] *Horizon Holdings Inc. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (Waxse, M.J.) (citing *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 322 (D. Kan. 1991)).

[12] *Daneshvar Graphic Technology, Inc.*, No. 97-2304, 1998 WL 726091, at *3 (D. Kan. Oct. 9, 1998) (Rushfelt, M.J.) (citing *Hoffman v. United Telecommunications, Inc.*, 117 F.R.D. 436, 438 (D. Kan. 1987)).

[13] *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332-33 (D. Kan.1991) (Wooley, M.J.).

Plaintiffs argue defendants have failed to substantiate their objections with any affidavits or evidence.  However, defendants have in fact offered the affidavits of several of its employees and an attorney involved in production of documents in the *Cavanaugh* case who provide detail regarding the nature of the burden as to certain requests.[14]  The court will consider each of the affidavits in its rulings on the corresponding requests.

C.     Privilege

Defendants argue if plaintiffs are seeking disparate impact analyses performed by Sprint's Legal Department in Request No. 10 (and others), and indirect information regarding such analyses in Requests Nos. 11 and 12, this information is privileged and has been protected from disclosure in both *Cavanaugh* and *Williams*.[15]  Defendants argue, to the extent plaintiffs are seeking such information, the court should deny plaintiffs' request based on the analysis in the *Cavanaugh* order, or permit additional briefing on this critically important issue.

Notably, plaintiffs have not addressed the above-referenced privilege issue in their reply brief.  Therefore, based on the record presented, the court infers plaintiffs are *not* seeking privileged information or information which has previously been protected in *Cavanaugh* and *Williams*.

---

[14] *See* docs. 121-6 through 121-10.

[15] Doc. 406 in *Cavanaugh v. Sprint/United Management Company*, 04-3418 (N.D. Ga.) (attached to defendants' response (doc. 121)).

Defendants also argue that similarly, plaintiffs' persistent demand for information in "native format" and metadata is troubling. Defendants claim "native format," as used by plaintiffs is a misnomer; but in reality, it simply means if a document was created in an Excel software program, then it should be produced in Excel format. Defendants argue this type of production implicates issues related to metadata and accessing electronic information in order to produce it destroys information that may be gleaned from metadata. Defendants claim, in addition, production of this metadata would also reveal the privileged process of gathering the information, whether for this case or another, as opposed to the status of the document as it existed during the relevant time period. Furthermore, the metadata would not provide information related to plaintiffs' individualized claims. Finally, defendants argue it is difficult and time-consuming to devise a manner of production that ensures the information exists now in the state it existed at the time the document may have originally been utilized, or to ensure active cells are not changed post-production. They claim the burden and risk associated with this type of production far surpass the benefits, which are minimal, if any, and which are unarticulated by plaintiffs. Defendants request this court permit additional briefing on this issue prior to ordering production of any metadata or any electronic discovery.

While plaintiffs have not addressed this argument in their reply, the court will consider defendants' argument in its rulings on the corresponding requests.

Mindful of the standards reviewed above, the court will now rule each of the requests in issue.

<u>Request No. 1</u> seeks:

> in separate tab delimited electronic files, the monthly snapshots of the data in Sprint's Human Resources Information System ("HRIS") and related Human Resources Reporting System ("HRRS"), including all data fields within said databases, for all employees of Sprint for each month from January 1, 2003 through December 31, 2004. This requires all iterations (including back-ups and monthly snapshots) of said databases throughout said time frame.

Defendants object to this request as irrelevant, overly broad, and unduly burdensome to the extent it seeks information for "all employees of Sprint" within a two-year time frame. In support of their objection as to the burdensomeness of this request, defendants have provided the Declaration of Robin O'Connor.[16]  She states:

> [f]irst, there are no 'monthly snapshots' of all the data in the Human Resources Information Systems ("HRIS").  Month-end reports exist for some, but not all the fields. While some information concerning some fields was produced in the *Williams* matter and in the *Cavanaugh* matter, that information covered smaller time periods than January 1, 2003 through December 31, 2004.  Thus, in order to produce the information requested, Sprint must determine which data fields are available in the month-end reports for an entire two-year period and then retrieve that information for all employees.   In addition, the department in Sprint that would be responsible for retrieving this information is understaffed.  Responding to a request of this nature and volume would take at least 80 hours and would require training at least one or more employees to retrieve the information sought.

---

[16]  Doc. 121-7.  Ms. O'Connor is a Manager of Employee Experience with Sprint/Nextel Corporation.

The court finds this request is over broad in that it seeks the requested information for "all employees." Thus, the court sustains defendants' objection. Accordingly, the court need not rule defendants' other objections. Plaintiffs' motion to compel with regard to this request is denied.

Request No. 2 seeks:

> in separate tab delimited electronic files the tracking database, and/or the so-called 'Operations Control Center' database, covering the time frame January 1, 2003 through December 31, 2004. This request requires production of all databases (in whatever name) that tracked employee/personnel job status changes such as, but not limited to: terminations, reductions-in-work force, lateral transfers, job downgrades and demotions for the time frame January 1, 2003 through December 31, 2004. This would include, but not be limited to, any and all databases operated by/from Sprint's HR Control Center.

Defendants object to this request as irrelevant, overly broad, and unduly burdensome to the extent it seeks "any and all databases operated by/from Sprint's HR Control Center" and does not specify the employees for whom the information is sought. In support of their objection as to the burdensomeness of this request, defendants have provided the Declaration of Chris Hertling.[17] In his declaration, he provides a detailed explanation of the purpose of the database and how it operates. He also states that information compiled on the OCC database was eventually uploaded into HRIS. He states, because the purpose of the OCC database was to track the repopulation of the transformed Sprint organization, the database

_____

[17] Doc. 121-6. Mr. Hertling is an HR program/Project Manager II with Sprint/Nextel Corporation.

does not contain information explaining why selections were made or who made the selections.  He also states no "archival" versions of the OCC database exist which would permit a user to view data as it existed at a specific point in time.

The court finds this request is over broad and therefore sustains defendants' objection. Accordingly, the court need not rule defendants' other objections.  Plaintiffs' motion to compel with regard to this request is denied.

Request No. 3 seeks:

> in electronic native format all records that show the name, department, job grade, job title, date of birth and last date of employment of all employees who were selected for termination in any reduction-in-force and/or reorganization and/or realignment occurring between April 1, 2003 and December 31, 2004.

Defendants object to this request as irrelevant, overly broad, and unduly burdensome to the extent it seeks "all records" of "all employees" selected for termination.  In support of their objection as to the burdensomeness of this request, Ms. O'Connor, in her declaration states the information sought by this request is a subset of the information requested in Request No. 1.  She states to respond to this request

> Sprint would have to devote precious manpower to culling through HRIS information to identify and then to make a judgment as to whether an employee was released as part of a so-called "reorganization" or "realignment."    Furthermore, Sprint would be required to manually sort out employees who volunteered for release as opposed to those selected for release.

Ms. O'Connor states the process required to respond to this request would take far in excess of the estimated eighty hours needed to respond to Request No. 1.

First, the court finds the request is *not* over broad and the information sought may lead to the discovery of admissible evidence, and therefore, is relevant.  Further, in balancing the benefit of plaintiffs having the requested information against the burden described by defendants, the court finds in favor of plaintiffs.  Plaintiffs' motion as to this request is granted.   To alleviate any of defendants' concerns regarding the confidentiality of information which may be included in the responsive documents, this information should be produced subject to the protective order previously entered this case (*see* doc. 39).  Defendants shall produce the requested information in the form in which it is currently maintained, but in electronic format to the extent possible.

Request No. 4 seeks "all databases in native electronic format showing the name, job title and date of birth/age of 'new hires' at Sprint during the time frame of January 1, 2003 through December 31, 2004."

Defendants object to this request as irrelevant, overly broad, and unduly burdensome.  In support of their objection as to the burdensomeness of this request, Ms. O'Connor, in her declaration states that to respond to this request, Sprint would have to create the information from scratch as there is no database or report that provides information requested about "new hires."   From this, she states:

> Sprint would be forced to sort the information in its HRIS system to find all employees with hire dates within the two year time frame requested.  This process would take more that the estimated time to respond to Request 1.  Additionally, it would take more time to isolate those employees that are true "new hires" as opposed to those employees who are rehires.

Here again, the court finds this request is not over broad and the information sought may lead to the discovery of admissible evidence, and therefore, is relevant. Further, in balancing the benefit of plaintiffs having the requested information against the burden described by defendants, the court finds in favor of plaintiffs. Plaintiffs' motion as to this request is granted. To alleviate any of defendants' concerns regarding the confidentiality of information which may be included in the responsive documents, these documents shall be produced subject to the protective order in this case. Defendants shall produce the requested information in the form in which it is currently maintained, but in electronic format to the extent possible.

Request No. 5 seeks:

> all databases, in native electronic format, that show the name, department, job grade, job title, date of birth and date of rehire (or reemployment) of all employees who were selected for involuntary change in job status, and/or who were included in any reduction-in-force and/or reorganization and/or realignment, between April 1, 2003 and December 31, 2004, who at any time thereafter was rehired or reemployed by Sprint. Produce all documents databases and spreadsheets which would show this information.

Defendants object to this request as irrelevant, overly broad, and unduly burdensome. In support of their objection as to the burdensomeness of this request, Ms. O'Connor, in her declaration states that to respond to this request, Sprint would have to create a report from scratch. In addition to the problems outlined with respect to Request 3, Sprint would have to manually sort information from HRIS in order to determine who may have been selected

for "involuntary change in job status." Ms. O'Connor states this process would take weeks in addition to the time necessary to respond to Request 1.

Once again, the court finds this request is not over broad and the information sought may lead to the discovery of admissible evidence, and therefore, is relevant. Further, in balancing the benefit of plaintiffs having the requested information against the burden described by defendants, the court finds in favor of plaintiffs. Plaintiffs' motion as to this request is granted. To alleviate any of defendants' concerns regarding the confidentiality of information which may be included in the responsive documents, these documents shall be produced subject to the protective order in this case. Defendants shall produce the requested information in the form in which it is currently maintained, but in electronic format to the extent possible.

Request No. 6 seeks:

> a complete copy of the LINK System data sets and/or Database(s), and all snapshots, downloads and other electronic copies of all or any part of same, in electronic native format, for all Sprint exempt employees (including but not limited to plaintiffs herein), for the time frame January 1, 2003 through December 31, 2004. Included in the data sets and/or databases should be employee name; social security number; date of birth; all ratings for said time period; the name(s) and the organization tree of rating supervisor(s) for each individual employed by Sprint during said time frame.

Defendants object to this request as vague, overly broad, and unduly burdensome to the extent it seeks "all snapshots, downloads and other electronic copies." Defendants also object to this request as irrelevant, overly broad, and unduly burdensome to the extent seeks information for "all Sprint exempt employees." In support of their objection as to the

burdensomeness of this request, defendants have provided the Declaration of Teresa Salinas.[18]  She states:

> [t]here is no LINK database or data set from which this information can be obtained other than by retrieving individual LINKS one by one.  In order to produce LINK information, I must determine if the LINK exists in electronic format.  If it does, I must either print it to obtain it in hard copy or burn it to a CD to obtain an electronic copy.  If it does exist in electronic form, one must search for and retrieve the supervisors's desk file, if it exists.  Then one must search that file to obtain a hard copy of the employee's LINK, if it exists.  Either way, LINK information must be pulled one-by-one, for any employee.  In this case, it would take months of full-time work to pull LINK information for the thousands of exempt employees from January 1, 2003 through December 31, 2004.

The court finds this request is over broad and thus sustains defendants' objection.  Accordingly, the court need not rule defendants' other objections.  Plaintiffs' motion to compel with regard to this request is denied.

Request No. 7 seeks:

> in electronic native format each and every document which provides information regarding the so-called "transformation" reorganization, including, but not limited to, all internal memoranda; e-mail communications between and among your employees responsible for planning and implementing that transformation reorganization; decks, PALS, or any other such data or documents.

Defendants object to this request as irrelevant, overly broad, and unduly burdensome to the extent it seeks "each and every document."  In support of their objection as to the

---

[18] Doc. 121-8.  Ms. Salinas is a Business Analyst I with Sprint/Nextel Corporation.

burdensomeness of this request, defendants have provided the Declaration of Terri Stanton.[19]
She states there is no central location where information related to the transformation
reorganization is kept and Sprint would need to contact all of its HR professionals to ask
them to begin the process of identifying responsive information.  The HR professionals
would then have to locate, collect, sort, segregate, and produce the information sought.  She
claims that information stored electronically would have to be retrieved from various
repositories and copied to a server.  Records would then have to be copied to disk for
counsel.  She states this would require a massive effort on the part of the entire HR
department.

The court finds this request is over broad and thus sustains defendants' objection.
Accordingly, the court need not rule defendants' other objections.  Plaintiffs' motion to
compel with regard to this request is denied.

Request No. 8 seeks:

> each and every deposition transcript, including ASCII disks, for
> depositions taken by Sprint in the case styled *Mary Pat
> Cavanaugh, et al. v. Sprint/United Management Company*, Civil
> Action 1:04-CV-3418-BBM. This includes but is not limited to
> deposition transcripts for all opt-ins whose depositions were
> taken by Sprint in the Cavanaugh case.

Defendants object to this request as irrelevant and overly broad.  Subject to and
without waiving the foregoing objections, defendants state they are unaware of deposition
transcripts taken by Sprint in *Cavanaugh* that are responsive to this request.

---

[19] Doc. 121-9.  Ms. Stanton is a Legal Analyst II with Sprint/Nextel Corporation.

Given the representation by defendants that they do not have any documents responsive to this request, the court denies plaintiffs' motion as to this request. However, pursuant to Fed. R. Civ. P. 26(e), defendants remain under the obligation to supplement this response if, in the future, responsive documents are discovered.

Request No. 9 seeks "all data, data sets and data bases produced by Sprint to plaintiffs' counsel in *Cavanaugh v. Sprint*, Civil Action 1:04-CV-3418-BBM."

Defendants object to this request as vague, overly broad, unduly burdensome, and not reasonably likely to lead to the discovery of admissible evidence. Defendants also object to this request to the extent it seeks work product and/or documents protected by the attorney-client privilege, and/or documents preserved from disclosure by a protective order.

Defendants have not demonstrated the requested discovery does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure. Defendants have not supported their objection as to the burdensomeness of responding to this request. Defendants have also failed to meet their burden establishing the documents responsive to this request are subject to the attorney-client privilege or are work product. Thus, plaintiffs' motion to compel with respect to this request is granted. Defendants shall produce the requested information in the form in which it is currently maintained, but in electronic format to the extent possible.

Request No. 10 seeks:

> all spreadsheets, including but not limited to candidate selection or realignment selection worksheets, which show the pools,

aggregations or other groupings of employees from which involuntary job status change and/or termination selections were made, for the time frame April 1, 2003 through December 31, 2004. Produce this information electronic, native format.

Defendants object to this request as overly broad and unduly burdensome to the extent it seeks "all spreadsheets," and seeks irrelevant information. Defendants also object to this request to the extent it seeks work product and/or documents protected by the attorney-client privilege, and/or documents preserved from disclosure by a protective order.

In support of their objection as to the burdensomeness of this request, defendants have provided the Declaration of J. Timothy McDonald.[20] He states that a complete response to this request and Requests Nos. 11 and 12 could not be performed without additional document retrieval from Sprint as the documents produced in *Cavanaugh* were for the time period April 1, 2003 through May 31, 2004, and the requests in issue seek documents for an additional seven months, through December 31, 2004. He claims after their review is done, an additional review would need to be completed. He estimates responding to this request would take a single reviewer approximately 665 hours.

As to production of the spreadsheets electronically, Mr. McDonald states

[s]uch productions require applying a readily-ascertainable method of marking the electronic documents to ensure that the parties can readily identify the same document as the litigation progresses during the deposition, hearing or briefing, as well as the electronic redaction of certain information that is not required to be produced. For example, in *Cavanaugh*, Sprint's production did not include Social Security numbers for non-

---

[20] Doc. 121-10. Mr. McDonald is a partner in the law firm of Rogers & Hardin, L.P. who was involved in the production of documents in *Cavanaugh*.

> plaintiffs, race or gender information as to individuals in most cases, or other privileged or work product information.  This production would take time in addition to that described above.

First, with regard to defendants' objection based on privilege, as previously noted above, the court infers that, because plaintiffs did not address the privilege issue in their reply briefing, plaintiffs are not seeking privileged information or information which has previously been protected in *Cavanaugh* and *Williams*.

The court finds this request is over broad and thus sustains defendants' objection. Accordingly, the court need not rule defendants' other objections.  Plaintiffs' motion to compel with regard to this request is denied.

Request No. 11 seeks:

> [i]n the case styled *Cavanaugh v. Sprint United Management Company*, No. 1:04-CV-3418-BBM, by Order dated March 20, 2006 Magistrate Judge Baverman ordered that 'Sprint must disclose all the spreadsheets that were submitted to HR prior to HR performing the Law Department – directed adverse impact analysis. Also to the extent it is possible to assign a date to such worksheets, such as through a corresponding e-mail, cover sheet, electronic signature or other means, Defendant must also identify for plaintiffs the chronology of various spreadsheets.' (See Order of March 20, 2006, p. 22). Please produce the foregoing documents and data, in electronic native form, covering the time frame April 1, 2003 through December 31, 2004.

Defendants object to this request as unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence.  Defendants argue that, as drafted, this request creates a misimpression as to the production of selection spreadsheets in *Cavanaugh*. Defendants argue Sprint was never required to identify "before" or "after" spreadsheets,

which this requests seek.  Defendants also object to this request to the extent it seeks work product and/or documents protected by the attorney-client privilege, and/or documents preserved from disclosure by a protective order.

In support of the objection based on the burdensomeness of this request, Mr. McDonald states to respond to this request and Request No. 12 would require the critical review of approximately 10,000 spreadsheets.  He estimates such review would take a single reviewer approximately 1000 hours.

For the reasons stated above, the court finds the privilege objection is overruled as moot.  The court also finds defendants have shown the burden in responding to this request outweighs the benefit to plaintiffs having the information.  Thus, plaintiffs' motion as to this request is denied.

Request No. 12 seeks all spreadsheets "which were created or utilized after that particular proposed job action was reviewed by the Law Department," in electronic native format all such spreadsheets created from April 1, 2003 through December 31, 2004, which Sprint had been ordered to produce in the March 20, 2006 order of Magistrate Judge Baverman.

Defendants object to this request as unduly burdensome and not reasonably likely to lead to the discovery of admissible evidence.  Defendants argue that, as drafted, this request creates a misimpression as to the production of selection spreadsheets in *Cavanaugh*.  Defendants argue Sprint was never required to identify "before" or "after" spreadsheets, which this requests seek.  Defendants also object to this request to the extent it seeks work

product and/or documents protected by the attorney-client privilege, and/or documents preserved from disclosure by a protective order.

In support of the objection based on the burdensomeness of this request, Mr. McDonald states to respond to this request and Request No. 11, it would require the critical review of approximately 10,000 spreadsheets. He estimates such review would take a single reviewer approximately 1000 hours.

For the above-stated reasons, the court finds the privilege objection is overruled as moot. The court also finds defendants have shown that the burden in responding to this request outweighs the benefit to plaintiffs having the information. Thus, plaintiffs' motion as to this request is denied.

Request No. 13 seeks:

> any and all data compilations and documents, in native electronic form, which constitute, contain or reflect any type of demographic breakdown and/or analysis of Sprint's workforce by age. This request is for data/documents generated during the years 2001; 2002; 2003; 2004.

Defendants object to this request as irrelevant, overly broad, and unduly burdensome to the extent it seeks "any and all data compilations and document" regarding "any type of demographic breakdown" and for the time periods requested. Defendants also object to this request to the extent it seeks work product and/or documents protected by the attorney-client privilege, and/or documents preserved from disclosure by a protective order.

In support of the objection based on the burdensomeness of this request, Ms. Stanton states there is no central location where documents related to the demographic breakdown

of Sprint's workforce are kept.  Sprint would have to employ the same process as outlined with regard to Request No. 7 to respond to this request.  She states this process would be ongoing and could take months.

The court finds this request is over broad and therefore sustains defendants' objection. Accordingly, the court need not rule defendants' other objections.  Plaintiffs' motion to compel with regard to this request is denied.

<u>Request No. 14</u> seeks "the Sprint Corporation Business Plan and Financial Projection 2004-2006 (prepared by Strategic Planning December 2003); and the Sprint Corporation Business Plan and Financial Projection 2005-2007 (prepared by strategic Planning December 2004)."

Defendants state they have no "Plan" as specifically described in this request.  Given the representation of defendants that they do not have any documents responsive to this request, the court denies plaintiffs' motion as to this request.  However, pursuant to Fed. R. Civ. P. 26(e), defendants remain under the obligation to supplement this response if, in the future, responsive documents are discovered.

### III.   Order

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.      Plaintiffs' motion to compel (**doc. 115**) is granted in part and denied in part.

2.      By **March 30, 2007**, defendants shall produce the information requested consistent with the above-stated rulings.

Dated this 8th day of March, 2007, at Kansas City, Kansas.


                            s/  James P. O'Hara
                            James P. O'Hara
                            U.S. Magistrate Judge